Tyler R. Andrews (SBN CA 250686)
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
andrewst@gtlaw.com

Attorneys for Defendant LANTERN CREDIT,
LLC f/k/a NEW ENGLAND FUNDING
TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APOLLO ENTERPRISE SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LANTERN CREDIT, LLC, F/K/A NEW ENGLAND FUNDING TECHNOLOGIES, LLC, a Delaware limited liability corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-02331-AB-JC<br><br>**DEFENDANT AND COUNTERCLAIMANT LANTERN CREDIT, LLC'S OPPOSITION TO APOLLO ENTERPRISE SOLUTIONS, INC.'S MOTION TO REMAND**<br><br>[*Declaration of Tyler R. Andrews and Declaration of Chad Swenson filed concurrently herewith*]<br><br>DATE:     May 30, 2017<br>TIME:     10:00 a.m.<br>CTRM.:    7B |

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND.............................................................................. 2

III.    LANTERN'S FIRST AMENDED COUNTERCLAIM RENDERS APOLLO'S MOTION TO REMAND MOOT ................................................ 5

IV.    LANTERN'S COUNTERCLAIMS SUPPORT FEDERAL JURISDICTION OVER THIS ENTIRE MATTER. ......................................... 6

       A.      Section 1454 Provides Removal Jurisdiction over Lantern's First and Second Counterclaims ........................................................ 6

       B.      Lantern's First and Second Counterclaims for Declaratory Relief Raise a Justiciable Controversy Regarding Patent Invalidity and Non-Infringement ............................................................................ 8

              1.      Apollo has threatened Lantern with infringement and demanded substantial royalties for patents Lantern alleges are invalid ........................................................................ 8

              2.      Lantern's declaratory relief claims are compulsory and would be subject to waiver if excluded from this dispute. .................. 11

       C.      Lantern's Remaining Counterclaims Also Confer Federal Jurisdiction Over this Case.................................................................. 12

V.      APOLLO'S COMPLAINT INDEPENDENTLY SUPPORTS FEDERAL JURISDICTION OVER THIS ENTIRE MATTER ........................... 13

VI.    THIS COURT MAINTAINS SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS AND COUNTERCLAIMS ......................... 15

VII.   FEES .................................................................................................................. 16

VIII.   CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

Cases

Additive Controls v. Flowdata,
   986 F.2d 476 (Fed.Cir.1993) ....................................................... 12

Alexsam, Inc. v. Green Dot Corporation,
   Case No. 2:15-cv-05742-CAS(PLAx), 2015 WL 6520917 (C.D. Cal.
   2015) ............................................................................................. 8

Alice Corp. Pty. Ltd. v. CLS Bank International,
   134 S. Ct. 2347 (2014). Dkt. ___ ............................................. 4, 13

Altvater v. Freeman,
   319 U.S. 359 (1943) .................................................................. 9, 10

AngioScore, Inc. v. TriReme Med., Inc.,
   No. 12-cv-03393-YGR, 2015 WL 1538153 (N.D. Cal) ................. 16

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,
   846 F.2d 731 (Fed. Cir. 1988) ..................................................... 10

Busch v. Jakov Dulcich & Sons LLC,
   No. 15–CV–00384–LHK, 2015 WL 3792898 (N.D. Cal. June 17, 2015) ...................... 7

Cardinal Chem. Co. v. Morton Int'l, Inc.,
   508 U.S. 83 (1993) ....................................................................... 10

Christianson v. Colt Indus. Operating Corp.,
   486 U.S. 800 (1988) ..................................................................... 15

Convent Corp. v. City of North Little Rock, Ark.,
   784 F.3d 479 (8th Cir. 2015) ....................................................... 17

Crater Corp. v. Lucent Techs., Inc.,
   255 F.3d 1361 (Fed. Cir. 2001) ................................................... 16

Cummins, Inc. v. TAS Distributing Co. Inc.,
   700 F.3d 1329 (Fed. Cir. 2012) ................................................... 11

Forsyth v. Humana, Inc.,
     114 F.3d 1467 (9th Cir. 1997), overruled on other grounds by Lacey v.
     Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) ................................................... 5

Garcia v. Regional Trustee Service Corp.,
     No. 3:11-cv-00470-ECR-VPC, 2012 WL 3656528 (D. Nev. Aug. 24,
     2012) ................................................................................................................ 6

Hunter Douglas v. Harmonic Design, Inc.,
     153 F.3d 1318 (Fed.Cir.1998) ...................................................................... 12

In re Pegasus Gold Corp.,
     394 F.3d 1189 (9th Cir. 2005) ..................................................................... 11

Jang v. Boston Scientific Corp.,
     767 F.3d 1334 (Fed. Cir. 2014) ........................................................ 13, 14, 15

Lear, Inc. v. Adkins,
     395 U.S. 653 (1969).......................................................................................12

Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.
     15-CV-04718-WHO, 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016)............................ 14

Lott v. Pfizer, Inc.,
     492 F.3d 789 (7th Cir. 2007) ........................................................................ 16

Martin v. Franklin Capital Corp.,
     546 U.S. 132 (2005)....................................................................................... 16

MedImmune, Inc. v. Genentech,
     549 U.S. 118 (2007)......................................................................................... 7

Medtronic, Inc. v. Mirowski Family Ventures, LLC,
     134 S. Ct. 843 (2014)....................................................................................... 7

Natec, Inc. v. Deter Co.,
     28 F.3d 28 (5th Cir. 1994) ............................................................................ 13

Ramirez v. Cty. of San Bernardino,
     806 F.3d 1002 (9th Cir. 2015) .................................................................... 5, 6

Rivet v. Regions Bank of Louisiana,
     522 U.S. 470 (1998)....................................................................................... 15

SanDisk Corp. v. STMicroelectronics, Inc.,
    480 F.3d 1372 (2007) ............................................................... 9, 10

Sony Electronics., Inc. v. Guardian Media Technologies., Ltd.,
    497 F.3d 1271 (Fed. Cir. 2007) ...................................................... 10

Teva Pharms., USA, Inc. v. Novartis Pharms. Corp.,
    428 F.3d 1330 (Fed. Cir. 2007) ........................................................ 8

U.S. Valves, Inc. v. Dray,
    212 F.3d 1368 (Fed. Cir. 2000) ...................................................... 14

Statutes

28 U.S.C. § 1331 ............................................................................... 1

28 U.S.C. § 1338 ........................................................................... 7, 14

28 U.S.C. § 1338(a) ............................................................ 1, 2, 7, 8, 17

28 U.S.C. § 1367 .............................................................................. 16

28 U.S.C. § 1367(c) .......................................................................... 16

28 U.S.C. §§ 1367 (c)(1)-(4) .............................................................. 16

28 U.S.C. § 1441 ............................................................................... 1

28 U.S.C. § 1441(a) ................................................................... 1, 6, 15

28 U.S.C. § 1447 .............................................................................. 16

28 U.S.C. § 1454 ........................................................................ passim

28 U.S.C. § 1454(a) ....................................................................... 1, 8

35 U.S.C. § 101 ........................................................................... 4, 12

35 U.S.C. § 271 ................................................................................ 5

Fed. R. Civ. P. 13(a)(1)(A) ............................................................ 8, 11

Fed. R. Civ. P. 15(a) .......................................................................... 5

Fed. R. Civ. P. 15(a)(1) ...................................................................... 1

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4

Defendant and Counterclaimant Lantern Credit, LLC hereby submits this Opposition to Apollo Enterprise Solutions, Inc.'s ("Apollo") Motion to Remand:

## I.   **INTRODUCTION**

This entire litigation involves the validity, enforceability, and value of certain patents owned by Plaintiff Apollo and licensed exclusively to Defendant Lantern.  There is no way to resolve this dispute without numerous substantive determinations of patent law, each of which is statutorily required to be heard and decided in federal court.  As such, Lantern properly removed this case to the Central District of California, and Apollo's Motion to Remand should be denied.

As an initial matter, Lantern has filed a timely First Amended Counterclaim under Rule 15(a)(1).  This amendment supersedes Lantern's original Counterclaim and renders Apollo's pending motions moot.

In any event, even as initially pled, the case is properly before this Court.  Indeed, Lantern's compulsory counterclaims—which seek declarations of patent invalidity and non-infringement, as well as determinations that Apollo procured the parties' underlying patent licensing agreement through fraud— either arise directly under federal patent law or raise substantial issues of federal patent law, and thus form a proper basis for removal under 28 U.S.C. §§ 1338(a), 1441, and 1454(a).  Independently, Apollo's own claims for relief against Lantern raise substantial issues of federal patent law and are subject to removal under 28 U.S.C. §§ 1331, 1338(a), and 1441(a).

Apollo mischaracterizes the nature and scope of this action in framing it as a narrow, state-law contract dispute.  Apollo cannot self-selectively limit the claims and issues to be decided in the case through careful wording its own pleadings.  The Leahy-Smith America Invents Act ("AIA") fundamentally altered the allocation of jurisdiction between state and federal courts in all claims involving patents.  Specifically, the AIA largely abrogated the "plaintiff's well-pleaded complaint" standard on which Apollo now relies, and made clear that, for all cases involving patent issues (unlike other "federal questions" ), the court's jurisdictional analysis looks to the claims of *any party*, including

1

counterclaims, to determine whether any cause of action arises under "any Act of Congress relating to patents."  28 U.S.C. §§ 1338(a), 1454.  If such a claim exists, whether raised by plaintiff or defendant, the state court cannot hear it, and the action is removable – indeed must be removed -- to federal court.

This lawsuit undisputedly involves a long term and exclusive patent licensing agreement between Apollo and Lantern.  Lantern has affirmatively pled claims of patent invalidity and non-infringement against Apollo, each of which stem directly from that agreement.  As a result: (1) under 28 U.S.C. § 1338(a), as revised by the AIA, the superior court lacked jurisdiction over those claims, and (2) under 28 U.S.C. § 1454, as enacted by the AIA, Lantern is entitled—indeed, is required—to remove the action to federal court. In seeking remand, Apollo would have this Court (1) ignore the subject and substance of the patent licensing agreement at issue; (2) ignore controlling precedent regarding removal of patent matters under the AIA and instead apply superseded case law; and (3) deny Lantern's right to bring compulsory counterclaims for patent invalidity and non-infringement, which are statutorily barred from being raised in state court.

Apollo cannot deny Lantern's removal rights by ignoring the critical patent issues at the core of this dispute.  A remand now would result in separate and related litigation in two different forums, creating a genuine risk of inconsistent or directly conflicting judgments.  This Court represents the only appropriate venue capable of fully resolving the controversy between the parties. Apollo's remand motion should be denied.

## II.   <u>FACTUAL BACKGROUND</u>

On February 17, 2017, Plaintiff Apollo filed a Complaint against Lantern in the Superior Court for the County of Los Angeles.   ECF No. 1-2, Compl.  Apollo's Complaint asserts claims for breach of contract, account stated, services rendered, and open book account.  *Id*.  All claims are based on an alleged breach of the parties' Master Services Agreement ("MSA"), which purported to grant Lantern an "exclusive worldwide license" to use and commercially exploit "all patents and pending applications assigned to" Apollo for specific fields of use critical to Lantern's business.  ECF No. 1-2,

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

Complaint, ¶ 1; ECF No. 21-4, MSA, § 3.1, MSA Exs. E & F, § 2.1.  Apollo's breach of contract claim alleges that "Apollo and Lantern entered into the Master Services Agreement whereby Apollo agreed to provide licensing and other services to Lantern in exchange for payments according to a fixed Fee Schedule."  ECF No. 1-2, Complaint, ¶ 15.  Lantern allegedly has "materially breached the Master Services Agreement" because it has failed to pay over $2,000,000 in patent and software licensing fees owed under the MSA.  *Id.*, ¶¶ 1, 10, 17.

On March 24, 2017, Lantern filed its Counterclaims and removed this action to federal court.  ECF No. 1, Not. of Removal; ECF No. 1-4, Countercl.  Lantern asserted counterclaims for declaration of patent invalidity and declaration of non-infringement, along with several pendant state law claims.  ECF No. 1-4, Countercl.  On April 14, 2017, as part of its attempt to avoid federal court jurisdiction or any analysis of the patents at the core of this dispute, Apollo filed its Motion to Dismiss Lantern's patent invalidity and non-infringement claims (ECF No. 12).  Although Lantern's original Counterclaims were properly pled, on May 5, 2017, Lantern filed its First Amended Counterclaims (ECF No. 21, "FACC"), alleging the same causes of action but with additional factual allegations that more specifically address the alleged deficiencies in its prior pleading.  After filing its FACC, Lantern requested that Apollo withdraw its motion and re-file new motions directed to the operative pleading.  Declaration of Tyler Andrews ("Andrews Decl."), ¶ 3.  Apollo refused to do so.  *Id.*, ¶ 4.

Lantern's Counterclaims directly result from the parties' dispute over the validity, enforceability, and value of the patents and services licensed under the MSA, and Apollo's threats to file patent infringement claims against Lantern.  Lantern entered into the MSA to obtain the exclusive right to exploit Apollo's patent portfolio.  ECF No. 21, FACC, ¶¶ 12, 22, 58; Decl. of Chad Swenson ("Swenson Decl.") ¶ 4.  Apollo represented to Lantern that its patents are directed to resolving and recovering outstanding debt, which is the field of use in which Lantern intended to use them.  ECF No. 21, ¶¶ 13, 15; Swenson Decl. ¶ 3.  Obtaining an exclusive license to Apollo's patent portfolio provided

3

OC 287677669v4

1    Lantern with valuable monopoly rights to exclude others from using those patented

2    inventions in these same areas.  ECF No. 21, ¶ 22; Swenson Decl. ¶ 3.

3         The validity and enforceability of Apollo's patents was critical to Lantern's

4    decision to enter the MSA.  ECF No. 21; ¶ 58, Swenson Decl. ¶ 4.  Lantern relied on

5    Apollo's representations that the licensed patents were valid, had value, and were

6    exclusive.  ECF No. 21, ¶ 58; Swenson Decl. ¶ 4.  Reflecting the importance of the

7    validity of the patents, as part of the MSA, Apollo agreed that if "one or more of the

8    Patents is determined to be *invalid* . . . then the Parties agree to reduce the License Fees."

9    ECF No. 21, ¶ 18; ECF No. 21-4, MSA Ex. F, § 4.2 (emphasis added).  Knowing the

10   continued validity of its patents was fundamental to Lantern's decision to enter the MSA,

11   Apollo advised Lantern that it was committed to enforcing its rights intellectual property

12   rights and patent portfolio.  ECF No. 21, ¶ 19; Swenson Decl., ¶ 3.

13        Lantern subsequently discovered that one or more of the patents licensed under the

14   MSA contained generic computer implementations of mere abstract ideas, and thus were

15   invalid business method patents under 26 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v.*

16   *CLS Bank International*, 134 S. Ct. 2347 (2014).  ECF No. 21, ¶¶ 2, 26-27; Swenson Decl.

17   ¶ 5.  In short, the patents on which Lantern was paying Apollo millions of dollars to are

18   invalid as being directed to un-patentable subject matter.  Lantern also determined that the

19   software maintenance and other ancillary services Apollo agreed to perform under the

20   MSA were not being performed adequately (if at all) and that Apollo was providing

21   Lantern no value in exchange for the substantial funds Lantern paid.  ECF No. 21, ¶¶ 23,

22   28; Swenson Decl. ¶ 6.  As a result, Lantern has no obligation to pay Apollo for patent

23   license fees or continuing software development work based on the invalid patents, and

24   stopped paying Apollo under the MSA.  ECF No. 21, ¶¶ 24, 29, 34.

25        Apollo has continued to demand payment of license fees under the MSA and

26   threatened to revoke Lantern's patent licenses and terminate Lantern's rights under the

27   MSA if Lantern does not pay the license fees.  ECF No. 21, ¶¶ 25, 29-32; Swenson Decl.

28   ¶¶ 7-8.  If Lantern's rights under the MSA are revoked, Lantern's use of Apollo's patents

4

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

would subject it to claims of patent infringement but for the continued enforceability of the MSA.  ECF No. 21, ¶ 32; Swenson Decl. ¶ 7.

On or around October 17, 2016, during an in-person meeting between representatives of the two companies, Apollo's Chairman and Chief Executive Officer Joseph Konowiecki directly accused Lantern of infringing Apollo's patents and threatened Lantern with an infringement action if Lantern continues its business while refusing to pay license fees under the MSA.  *Id.*, ¶ 31; Swenson Decl. ¶ 8.  Accordingly, Lantern seeks a determination that two of the patents licensed under the MSA are invalid and a determination that Lantern has not infringed Apollo's patents under 35 U.S.C. § 271, among its other claims.

### III.  LANTERN'S FIRST AMENDED COUNTERCLAIM RENDERS APOLLO'S MOTION TO REMAND MOOT

Federal Rule of Civil Procedure 15(a) provides that a plaintiff may amend his complaint "as a matter of course" within 21 days after (1) service of the complaint, (2) service of a responsive pleading, or (3) service of a motion under Rule 12(b), (e), or (f).  The Ninth Circuit construes "the phrase 'matter of course' as consonant with 'as of right,' implying, if not expressly declaring, that Rule 15 confers a 'right' to amend upon the parties." *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015).  When an amended complaint is filed, it "supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (internal citation omitted), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896, 927–28 (9th Cir. 2012).

Apollo filed its Motion to Remand on April 17, 2017.  ECF No. 13.  Twenty-one days later, on May 5, 2017, Lantern amended its counterclaim pursuant to Rule 15(a).  ECF No. 21, FACC.  Lantern's FACC directly addresses the purported jurisdictional defects raised in Apollo's Motion to Remand.  Specifically, Lantern alleges and confirms that Apollo directly threatened Lantern with a patent infringement action if Lantern continued its business while refusing to pay license fees purportedly due under the MSA.

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

*Id.* at ¶¶ 1, 31-32.  Thus, Apollo's motion should be denied as moot.  *Ramirez*, 806 F.3d at 1008 ("Plaintiff's Second Amended Complaint superseded the First Amended Complaint, and the First Amended Complaint ceased to exist. Because the Defendants' motion to dismiss targeted the Plaintiff's First Amended Complaint, which was no longer in effect, we conclude that the motion to dismiss should have been deemed moot before the district court granted it."); *Garcia v. Regional Trustee Service Corp.*, No. 3:11-cv-00470-ECR-VPC, 2012 WL 3656528 (D. Nev. Aug. 24, 2012) (denying defendant's motion to remand as moot where it was filed before the filing of the plaintiff's second amended complaint).

After filing the FACC, Lantern requested that Apollo withdraw its motions and to direct any re-filed motions to the operative pleading.  Andrews Decl., ¶ 3.  Apollo refused to do so.  *Id.*, ¶ 4.  Accordingly, Lantern is filing this Opposition out of an abundance of caution even though the subsequent FACC renders Apollo's motions legally moot.

## IV.   <u>LANTERN'S COUNTERCLAIMS SUPPORT FEDERAL JURISDICTION OVER THIS ENTIRE MATTER.</u>

Lantern's counterclaims seek a declaration of patent invalidity, a declaration of patent non-infringement, a finding of fraudulent misrepresentations regarding patent rights, and related claims.  Each of Lantern's causes of action arises directly under or involves substantial questions of federal patent law.  As such, federal subject matter jurisdiction is proper over this entire matter under 28 U.S.C. § 1454.

### A.   Section 1454 Provides Removal Jurisdiction over Lantern's First and Second Counterclaims

Pursuant to 28 U.S.C. § 1454, removal is proper in a civil action "in which *any party* asserts a claim for relief arising under any Act of Congress relating to patents."  28 U.S.C. § 1454 (emphasis added).  Unlike removal under 28 U.S.C. § 1441(a), which primarily assesses the plaintiff's initial claims, Section 1454 permits removal by way of a defendant's counterclaims.  *See generally Busch v. Jakov Dulcich & Sons LLC,* No. 15–CV–00384–LHK, 2015 WL 3792898, at *5 (N.D. Cal. June 17, 2015) ("Section 1454 serves as an exception to the general rule that federal question jurisdiction exists only

1    when the plaintiff's complaint includes a cause of action arising under federal law.").

2    This unique patent-related exception to the "well-pleaded complaint" rule emphasizes

3    how strongly Congress intends for *all* patent claims to retain exclusive federal jurisdiction.

4    Indeed, when enacting Section 1454, Congress concurrently amended Section 1338 to

5    provide that **"[n]o State court shall have jurisdiction over any claim for relief arising**

6    **under any Act of Congress relating to patents**."  28 U.S.C. § 1338(a).

7            Even if a patent owner chooses a state court forum to seek contractual relief,

8    declaratory counterclaims pleaded by a licensee are statutorily prohibited from being

9    adjudicated in state court.  Therefore the case *must be* removed, and will have the same

10   jurisdictional result as if the licensee filed the declaratory claim in federal court in the first

11   instance.  Under Section 1454, the counterclaim will support federal removal jurisdiction

12   and preclude the patent owner from remaining in state court.  *See MedImmune, Inc. v.*

13   *Genentech*, 549 U.S. 118, 128 (2007).

14           Most recently, in *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 134 S. Ct. 843

15   (2014), the Supreme Court reiterated that a declaratory judgment action non-infringement

16   arises under federal patent law, even if the patent holder is more likely to bring a breach of

17   contract action (as Apollo has done here).  *Id*. at 848.  Like Lantern, the licensee,

18   Medtronic, believed that it owed no royalties to the patent owner, Mirowski, because

19   Medtronic's products did not infringe the licensed patent.  *Id*.  Medtronic was entitled to

20   bring a federal declaratory judgment action because Mirowski could, *hypothetically*, bring

21   an infringement claim, even though it was more likely to bring a contract action.  *Id*. ("If

22   Medtronic were to act on that belief (by not paying royalties and not bringing a

23   declaratory judgment action), Mirowski *could* terminate the license and bring an ordinary

24   federal patent law action for infringement."  *Id*. (emphasis added).  Therefore, the

25   declaratory judgment action "is properly characterized as an action 'arising under an Act

26   of Congress relating to patents.'"  *Id*. at 849 (citing 28 U.S.C. § 1338(a)).

27           Lantern's declaratory relief claims of patent invalidity and non-infringement arise

28   directly under federal patent law and, on their face, support removal jurisdiction

**LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND**

OC 287677669v4

under Sections 1338(a) and 1454(a). *See Alexsam, Inc. v. Green Dot Corporation*, Case No. 2:15-cv-05742-CAS(PLAx), 2015 WL 6520917 (C.D. Cal. 2015) (denying the plaintiff's motion to remand based on court's finding that removal was proper under § 1454(a) because the defendant had raised declaratory judgment invalidity counterclaims in response to plaintiff's breach of license agreement claims).

> ### B. Lantern's First and Second Counterclaims for Declaratory Relief Raise a Justiciable Controversy Regarding Patent Invalidity and Non-Infringement

Apollo acknowledges (as it must) that Lantern's first and second counterclaims arise under federal law, and, unless dismissed, defeat Apollo's Motion to Remand as a matter of law. Rather than argue that a state court should, or even could, address Lantern's counterclaims (which are exclusive to federal court), Apollo simply incorporates and repeats its argument that Lantern's counterclaims are not justiciable here and should be dismissed under Rule 12. *See* ECF No. 12. Apollo's justiciability arguments lack merit because Lantern's first and second counterclaims (1) directly involve Apollo's demands for patent royalty payments and threats to enforce its patent rights against Lantern, and (2) are compulsory under FRCP 13(a)(1)(A) because they arise out of the same transaction or occurrence that is the subject of Apollo's claims.[1]

> #### 1. Apollo has threatened Lantern with infringement and demanded substantial royalties for patents Lantern alleges are invalid

The standard for determining justiciability of a declaratory judgment action is whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Teva Pharms., USA, Inc. v. Novartis Pharms. Corp.*, 428 F.3d 1330, 1337 (Fed. Cir. 2007), *citing Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

---

[1]   To be sure, all of Lantern's counterclaims are compulsory, not just the patent-based ones.

8

OC 287677669v4

The facts alleged in Lantern's Counterclaim and stated in the Declaration of Chad Swenson show that a substantial controversy exists as to Lantern's claims for patent invalidity.[2]  Apollo's action is premised on the validity of its patents because they were critical to Lantern's decision to enter the MSA.  Swenson Decl., ¶ 5.  Lantern's invalidity challenge, if successful, would likely represent a complete defense to Apollo's action.  As a result, the validity of Apollo's patents is ripe, and clearly warrants issuance of a declaratory judgment.

An equally justiciable dispute exists as to Lantern's claim for non-infringement. From the beginning, Apollo made clear that it was committed to protecting its patents and that Lantern must pay license fees to continue engaging in its business.  Swenson Decl., ¶ 4.  Moreover, Apollo has directly accused Lantern of infringing Apollo's patents and threatened an infringement suit if Lantern did not pay license fees.  *Id.*, ¶ 7.  Accusations of infringement are exactly the type of "affirmative act" that creates a justiciable declaratory claim for non-infringement.  *See SanDisk Corp. v. STMicroelectronics*, Inc., 480 F.3d 1372, 1373-76 (Fed. Cir. 2007).

But even assuming such express threats did not exist, an actual accusation of infringement is not required to establish a justiciable declaratory patent claim.  Especially where, as here, a patentee demands royalties under a license agreement and the licensee refuses to pay them due in part to its belief that the patents are invalid.  *Altvater v. Freeman,* 319 U.S. 359, 365 (1943) ("[T]he requirements of [a] case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim.").  Courts have repeatedly held that counterclaims for invalidity and non-infringement are justiciable in response to contract claims involving patent licenses, *even where the plaintiff expressly states it has no intention of bringing patent claims. See e.g., SanDisk Corp. v. STMicroelectronics*, Inc.,

---

[2]  Chad Swenson is the Chairman and Chief Executive Officer of Lantern and his declaration is being filed concurrently with Lantern's Opposition.

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4

480 F.3d 1372 (Fed. Cir. 2007) (holding plaintiff's declaratory claims for invalidity and non-infringement were justiciable even though defendant stated it "has absolutely no plan whatsoever to sue" because defendant's demands for royalty payments showed a "preparedness and willingness to enforce its patent rights"); *Sony Electronics., Inc. v. Guardian Media Technologies., Ltd.,* 497 F.3d 1271 (Fed. Cir. 2007) (actual controversy existed where defendant had demanded royalties from plaintiff, and plaintiff contended that it should be free to engage in such activities without a license because the underlying patents were invalid).

Further, the Declaratory Judgment Act "enable[es] a test of the validity and infringement of patents that are possibly being used only as . . . 'scarecrows.'" *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 n.4 (Fed. Cir. 1988). Scarecrow patents are those possibly invalid patents that the patentee is still able to use to inhibit innovation by threatening competitors with charges of infringement. "Merely the desire to avoid the threat of a 'scarecrow' patent' may satisfy the Declaratory Judgment Act." *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96 (1993). Thus, "[t]he existence of an invalid patent may substantially impair the economic position of those who market articles which infringe such a patent, even though no infringement suits may be immediately threatened." *Altvater v. Freeman*, 319 U.S. 359, 371 (1943) (opinion of Frankfurter, J.).

Apollo's conduct objectively gives rise to an actual patent-based controversy under the totality of circumstances. As alleged in Lantern's counterclaim, Apollo has threatened to revoke Lantern's licenses under the MSA and alleged that Lantern has breached the MSA. Counterclaim, ¶ 38. Such revocation would terminate Lantern's rights under the MSA, subjecting it to almost certain infringement claims by Apollo. Counterclaim, ¶¶ 37-38. The parties' pre- and post- suit negotiations also establish that this dispute has always been over whether Lantern owes royalties based on Apollo's patents. Swenson Decl., ¶¶ 4-5, 7-9. Accordingly, Lantern's claims for declarations of non-infringement and invalidity are justiciable.

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

## 2. Lantern's declaratory relief claims are compulsory and would be subject to waiver if excluded from this dispute.

Lantern brought its counterclaims because they are *compulsory*—they are based on the same operative facts and raise the same dispute as Apollo's claims (*i.e.*, whether Lantern's products are covered by any claim of Apollo's patents). *See* Fed. R. Civ. P. 13(a)(1)(A). A logical relationship exists between Lantern's counterclaims and Apollo's contract claims because they involve the validity and scope of the same agreement (the MSA). The patents licensed to Lantern serve as the basis of both parties' claims and activate legal rights otherwise dormant in the Lantern to challenge the basis for Apollo's claims. *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1195–96 (9th Cir. 2005). Indeed, res judicata may bar any subsequent suit by Lantern for invalidity, non-infringement, fraudulent misrepresentation, or breach of contract in connection with the agreements at issue if not raised by Lantern now. *See Cummins, Inc. v. TAS Distributing Co. Inc.*, 700 F.3d 1329 (Fed. Cir. 2012) (holding Cummins failure to assert invalidity and non-infringement counterclaims in response to initial breach of contract suit brought by TAS waived them in subsequent contract suit between the parties). Furthermore, the Court would hear substantially the same evidence to determine the validity of MSA as it would to resolve Lantern's counterclaims. Accordingly, Lantern's counterclaims are compulsory, rending Apollo's justiciability arguments moot.

Practicality and public policy also favor adjudicating Lantern's counterclaims in this action. The hardship on all parties, even on Apollo, of not adjudicating the issue is clear: either Apollo stops receiving substantial royalty payments while Lantern risks the consequences of patent infringement, or Lantern continues to pay royalties on patents that may be invalid (and if so, would harm not only Lantern but the public as well). "Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969).

11

OC 287677669v4

### C.    Lantern's Remaining Counterclaims Also Confer Federal Jurisdiction Over This Case.

Even Lantern's non-statutory counterclaims involve substantial questions of federal patent law and support federal jurisdiction.  Lantern's claims for fraudulent inducement, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, and for money had and received are each based on allegations that (1) Apollo fraudulently induced Lantern to enter into the MSA for an exclusive worldwide license of Apollo's patents based on false representations of exclusivity and validity, and (2) Apollo breached the MSA by licensing its purportedly exclusive patents to another entity conducting business in the same industry as Lantern.

Resolving these claims necessarily involves patent determinations because Lantern will need to show that the patents licensed under the MSA (a) cover the patents and products Apollo licensed to third parties in the same field of use, and (b) are invalid business method patents under 35 U.S.C. § 101.  In fact, the validity of Apollo's patents turns directly on the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), as Lantern alleges that one or more of Apollo's patents is a generic computer implementation of a mere abstract idea.  ECF No. 21, ¶ 2.  Federal courts routinely assert jurisdiction in patent licensing cases that raise issues of validity, even when claims arising directly under federal law are absent.  *See e.g., Hunter Douglas v. Harmonic Design, Inc.,* 153 F.3d 1318 (Fed.Cir.1998) (asserting jurisdiction over state tort claims, while dismissing claims for declarations of non-infringement and invalidity, against patentee accused of falsely claiming to hold exclusive rights under patents that were invalid), *overruled on other grounds by Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998); *Additive Controls v. Flowdata,* 986 F.2d 476 (Fed.Cir.1993) (asserting jurisdiction over state law business disparagement claim because establishing the claim required Additive to prove that Flowdata made false statements, which in turn required proof of non-infringement, a "substantial question of patent law." ).

Thus, even if Lantern's exclusively federal declaratory relief claims were

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4

1  withdrawn or dismissed, the case would still require federal adjudication.  The validity

2  and enforceability of Apollo's patents were critical to Lantern's decision to enter the MSA

3  and must be adjudicated, even without direct patent claims.  *Natec, Inc. v. Deter Co*., 28

4  F.3d 28, 29 (5th Cir. 1994) (transferring an appeal to the Federal Circuit after determining

5  that the plaintiff's state contract claim required a determination of whether his license was

6  enforceable after the patent expired).

7          Accordingly, all primary issues to be decided in this action over the MSA depend

8  upon claims arising under federal law or substantial questions of patent law for their

9  resolution, and this entire action may be properly removed to this Court pursuant to 28

10  U.S.C. § 1454.

11  **V.    APOLLO'S COMPLAINT INDEPENDENTLY SUPPORTS FEDERAL**

12          **JURISDICTION OVER THIS ENTIRE MATTER**

13          Even if recent and applicable law arising under the AIA were disregarded, and

14  Apollo's outdated standard (focusing only on the plaintiff's claims, not the counterclaims)

15  were applied, removal of this entire matter would still be proper.  Apollo's contention that

16  its complaint only asserts state-law contract claims that "do not turn on the resolution of

17  any questions of federal patent law" (ECF No. 13 at 9-10) ignores that the core of this

18  dispute turns on the validity of the Apollo patents licensed under the MSA.  This is a

19  federal issue that will be decided based on the Supreme Court's recent decision in *Alice,*

20  and therefore requires this Court to interpret substantial questions of patent law.

21          Federal question jurisdiction is available in actions involving state law claims,

22  where those claims necessarily involve the resolution of underlying disputed questions of

23  federal law.  *Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (Fed. Cir. 2014) (holding

24  contract claims that require an infringement determination arise under patent law such that

25  federal courts have exclusive jurisdiction).  Thus, while jurisdiction over the entire matter

26  is established under 28 U.S.C. § 1454, this Court may also invoke jurisdiction pursuant to

27  28 U.S.C. § 1338, which provides "original jurisdiction of any civil action arising under

28  any Act of Congress relating to patents."  *See* 28 U.S.C. § 1338.

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4

A contract action raises substantial questions of federal patent law where its resolution will require the court to interpret patents, including their scope and validity. *See Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (Fed. Cir. 2014) (asserting  jurisdiction where the court "may be called upon to determine the extent to which [patent] validity is made relevant to the resolution of the breach-of-contract claim by the language of the contract itself."); *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (claims arose under federal patent law where the license agreement provided for exclusive rights regarding the licensed product and resolving the claims would require determining whether the patents at issue were infringed); *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.* 15-CV-04718-WHO, 2016 WL 1365946, at \*5 (N.D. Cal. Apr. 6, 2016) (holding a breach of contract claim based on failure to pay patent royalties required plaintiff to prove that the process at issue was covered by a valid and enforceable patent).

Here, Apollo's action raises substantial questions of federal law.  Apollo's claims are contingent upon the primary patents in its portfolio remaining legally valid and enforceable.  Indeed, the MSA puts validity directly at issue by making the amount of license fees owed *dependent* on the validity and enforceability of the licensed patents:  "In the event that . . . one or more of the [Apollo] Patents is determined to be *invalid* . . . and such invalid [Apollo] Patents are applicable to [Lantern's] use of the Vendor Solution, then *the Parties agree to reduce the License Fees*."  MSA, § 4.2 (emphasis added).  Thus, any royalties previously paid by or currently demanded must be reduced where Apollo's patents are determined to be invalid.  Further, Apollo expressly warranted in the MSA that it obtained the necessary rights to perform its obligations, that it would not take any action inconsistent with the MSA, and that it had the power to enter the MSA with Lantern. MSA, § 11.1, *see also* Counterclaim, ¶ 15.  Lantern never consented to pay any royalties or license fees for invalid or unenforceable patents .

Additionally, an element of any breach of contract claim is that the plaintiff itself is *not* in breach of the agreement.  Apollo alleges in its complaint that it has "performed, and continues to perform, all conditions, covenants, and promises required on its part to be

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

performed in accordance with the terms and conditions of the Master Services Agreement."  *See* Complaint at ¶ 16.  Any proof in support of this allegation will necessarily involve substantial questions of federal patent law, including whether Apollo's patents are valid, enforceable, exclusive, and provided adequate consideration for the sums demanded from Lantern.

Further, the vast majority of the more than $2 million in damages sought in Apollo's complaint is comprised of allegedly due and owing patent license fees.  *See Jang*, 767 F.3d at 1337 ("[C]ontract claims based on underlying ongoing patent royalty obligations, such as the ones at issue here, raise the real world potential for subsequently arising infringement suits affecting other parties.").  As such, the circumstances present here represent issues of patent law and should foreclose remand.

Apollo cannot avoid federal jurisdiction over this matter by its repeated and self-serving assertion that it did not plead any federal patent law claims in its complaint.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 n.3 (1988) ("[M]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law."); *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475 (1998) ("If a court concludes that a plaintiff has 'artfully pleaded' claims [that raise federal questions], it may uphold removal even though no federal question appears on the face of the plaintiff's complaint.").

Accordingly, in addition to Lantern's proper removal under to 28 U.S.C. § 1454, this entire action may also be properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

## VI.  THIS COURT MAINTAINS SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS AND COUNTERCLAIMS

If this Court finds that it does not have original jurisdiction over any particular claim or counterclaim, it should nonetheless exercise supplemental jurisdiction and retain all claims in light of the patent issues that pervade this entire action.  The claims and counterclaims of both parties are "so related to claims in the action within [this Court's]

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367; *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1369-70 (Fed. Cir. 2001) ("Having original jurisdiction based on [party's] patent law claims, the district court [had] supplemental jurisdiction over [party's] state law claims for breach of contract and misappropriation of trade secrets because those claims 'form[ed] part of the same case or controversy[.]'").

Further, the reasons for making an exception to supplemental jurisdiction under Section 1367(c) do not apply. *See* 28 U.S.C. §§ 1367 (c)(1)-(4). The parties' contract-based claims do not raise a "novel or complex issue of State law." Nor do they "substantially predominate[ ] over the claims over which the district court has original jurisdiction." In fact, the contract claims alone would justify federal jurisdiction, as they depend on whether or not Lantern maintains the right to utilize Apollo's patented technology, and on whether Apollo's patents are valid in the first place. These matters are statutorily required to be decided in federal court. The Court should not dismiss the claims over which it has original jurisdiction; and there are no other compelling reasons to decline jurisdiction on account of exceptional circumstances. *See AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR, 2015 WL 1538153, at *4 (N.D. Cal)

## VII.   FEES

Apollo's demand for fees is without merit. Even if Apollo's motion were granted, there is no automatic entitlement to an attorney fees award on remand. In deciding whether an award is "just" under § 1447(c), the key factor is the propriety of the removal: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, *when an objectively reasonable basis exists, fees should be denied*." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). According to one court: "[I]f clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorney's fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) (emphasis added).

OC 287677669v4

As shown above, Lantern has more than an objectively reasonable basis for removal. Indeed, Lantern has a clear statutory basis *mandating* removal and compelling denial of this Motion to Remand. By definition, patent claims arise under federal law and state courts have no jurisdiction to hear them. *See* 28 U.S.C. 1454; *see also* 28 U.S.C. 1338(a) ("[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents."). Lantern's counterclaims for patent invalidity and non-infringement undeniably arise under patent laws in the original jurisdiction of federal courts. As a result, Lantern's removal was objectively reasonable.

Apollo's argument that fees should be awarded if its remand motion is granted ignores the standard for such an award. In determining whether the removing party lacked an objectively reasonable basis for seeking removal, "the court must consider the objective merits of removal at the time of removal, *irrespective of the ultimate remand*." *Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015) (emphasis added). Further, Apollo's unfounded argument that Lantern's patent claims are not justiciable evades the sweeping revisions implemented by the AIA. Despite the AIA's new jurisdictional inquiry, Apollo fails to devote a single word of its 16-page brief to any statutory analysis of the AIA provisions affecting —and, in this case, *requiring*—federal jurisdiction. Apollo's request for fees should therefore be denied.

### VIII. CONCLUSION

For all of the foregoing reasons, this Court should deny Apollo's Motion to Remand and assert subject matter jurisdiction over all of the claims and counterclaims presented in this action.

DATED:  March 24, 2017                GREENBERG TRAURIG, LLP


By _____*/s/ Tyler R. Andrews*_____
Tyler R. Andrews
Attorneys for Defendant LANTERN CREDIT,
LLC f/k/a NEW ENGLAND FUNDING
TECHNOLOGIES, LLC

17

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4

<u>**CERTIFICATE OF SERVICE**</u>

I, Tyler R. Andrews, an attorney, hereby certify that on May 8, 2017, I caused a complete and accurate copy of the foregoing to be served via this Court's ECM/ECF notification system, which will serve electronically to all participants in the case.

*/s/ Tyler R. Andrews*

LANTERN'S OPPOSITION TO APOLLO'S MOTION TO REMAND

OC 287677669v4