Tyler R. Andrews (SBN CA 250686)
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
andrewst@gtlaw.com

Attorneys for Defendant LANTERN CREDIT, LLC

**UNTED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APOLLO ENTERPRISE SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LANTERN CREDIT, LLC, F/K/A NEW ENGLAND FUNDING TECHNOLOGIES, LLC, a Delaware limited liability corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:2017-cv-02331-AB-JC<br><br>**LANTERN CREDIT, LLC'S OPPOSITION TO APOLLO ENTERPRISE SOLUTION, INC.'S MOTION TO DISQUALIFY GREENBERG TRAURIG, LLP AS COUSNSEL FOR DEFENDANT (DKT. 14)**<br><br>DATE: May 22, 2017<br>TIME: 10:00 a.m.<br>CTRM.: 7B |



Block DocID

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Apollo Retained Other Patent Counsel Before The Patents Were Ever Filed .......... 2

B. Lantern's Counterclaims Rely On The New Legal Standard For Patentability, Not Apollo's Provisional Patent Application .......... 4

C. The Sole Remaining Greenberg Attorney Associated With Apollo's Provisional Application Is Subject To An Ethical Screen .......... 5

D. Apollo Has Always Been Aware Of Greenberg's Representation Of Lantern Regarding This Dispute .......... 6

III. LEGAL ARGUMENT .......... 7

A. Disqualification Is Disfavored .......... 7

B. Greenberg Does Not Possess Any Confidential Information Related To This Matter .......... 9

C. No "Substantial Relationship" Exists That Would Mandate Disqualification of Greenberg .......... 9

1. There is no Substantial Relationship Between the Former and Current Representations .......... 11

2. Similar Subject Matter Is Not Sufficient To Establish A Substantial Relationship .......... 12

3. Apollo Sets Forth No Authority Mandating Disqualification Of Greenberg .......... 14

D. Greenberg Should Not Be Disqualified Even If A Substantial Relationship Exists .......... 15

E. Policy Considerations Favor Lantern's Choice Of Counsel .......... 18

IV. CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. Primerica Holdings, Inc.*,
822 F. Supp. 1099 (D.N.J.1993) .......... 8

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
134 S. Ct. 2347 (2014) .......... *passim*

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
No. 14-02139, 2014 WL 12589658 (C.D. Cal. June 16, 2014) .......... 7

*Asyst Technologies, Inc. v. Empak, Inc.*,
962 F.Supp. 1241 (N.D. Cal. 1997) .......... 14

*Bobbitt v. Victorian House, Inc.*,
545 F. Supp. 1124 (N.D. Ill. 1982) .......... 8

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
No. 2016-1781, 2017 WL 992528 (Fed. Cir. Mar. 15, 2017) .......... 15

*Debt Resolve, Inc. v. Apollo Enterprise Solutions, LLC*,
Case No. 3:07-cv-00103-MLC-TJB (D. NJ, Filed January 8, 2007) .......... 6

*Eclipse IP LLC v. McKinley Equip. Corp.*,
No. SACV-14-154-GW-AJWX, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) .......... 14

*Ernie Ball, Inc. v. Earvana, LLC*,
No. 06-384, 2006 WL 4941832 (C.D. Cal. Aug. 9, 2006) .......... 8

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
C08-04909 SI, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) .......... 7, 10

*Hitachi*,
419 F. Supp. 2d 1158 (N.D. Cal. 2006) .......... 16

*In re Cty. of Los Angeles*,
223 F.3d 990 (9th Cir. 2000) .......... 15, 16

*In re Marvel*,
251 B.R. 869 (Bankr. N.D. Cal. 2000), aff'd, 265 B.R. 605 (N.D. Cal. 2001) .......... 8

*Layer2 Communications, Inc. v. Flexera Software LLC*,
No. 13-02131, 2014 WL 2536993 (N.D. Cal. Jun. 5, 2014) . Filed .......... 11

*Mortg. Grader, Inc. v. Costco Wholesale Corp.*,
No. SA-CV-1300043-AG-ANX, 2014 WL 10763261 (C.D. Cal. Oct. 27, 2014) .......... 14

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*,
760 F.2d 1045 (9th Cir. 1985) .......... 8

*Richardson-Merrell, Inc. v. Roller*,
472 U.S. 424 (1985) .......... 7, 8

*Somers v. Digital Realty Trust, Inc.*,
119 F. Supp. 3d 1088, 1107 (N.D. Cal. 2015), *aff'd*, 15-17352, 2017 WL 908245 (9th Cir. Mar. 8, 2017) .......... 12

*State Insurance Compensation Insurance Fund v. Drobot*,
2014 WL 12579808 (C.D. Cal. 2014) .......... 16

*Trust Corp. of Montana v. Piper Aircraft Corp.*,
701 F.2d 85 (9th Cir. 1983) .......... 6

*Voter Verified Inc. v. Election Systems & Software LLC*,
No. 16-cv-267-MW-GRJ (N.D. Fla.), Dkt. 25 .......... 14

*Walker Digital, LLC v. Axis Communications AB*,
2012 WL 5878668 (D. Del. Nov. 21, 2012) .......... 13

**State Cases**

*Banning Ranch Conservancy v. Superior Court*,
193 Cal.App.4th 903 (Cal. App. 2011) .......... 9, 10

*People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc.*,
20 Cal.4th 1135 (1999) .......... 15

*Farris v. Fireman's Fund Ins. Co.*,
119 Cal.App.4th 671 (Cal. App. 2004) .......... 10, 11

*Flatt v. Superior Court*,
9 Cal.4th 275 (1994) .......... 17

*Gregori v. Bank of Am.*,
207 Cal. App. 3d 291 (1989), modified (Feb. 17, 1989) .......... 8

*H. F. Ahmanson & Co.*,
229 Cal. App. 3d (1445) (1991) .......... 12

*Henriksen v. Great American Savings & Loan*,
11 Cal.App.4th 109 (1992) .......... 17

*Jessen v. Hartford Cas. Ins. Co.*
(2003) 111 Cal.App.4th 698, 3 Cal.Rptr.3d 877 .......... 10

*Johnson v. Superior Court*,
159 Cal. App. 3d 573 (1984) .......... 12

*Khani v. Ford Motor Co.*
155 Cal. Rptr. 3d 532 (2013) .......... 12

*Khani v. Ford Motor Co.*,
215 Cal.App.4th 916. (Ca. Ct. App., 2013) .......... 11

*Kirk Corp. v. First American Title Co.*,
220 Cal.App.3d 804 (1990) .......... 12, 13

*Kirk v. First Am. Title Ins. Co.*,
183 Cal.App.4th 776 (Cal. App. 2010) .......... 7, 16, 18

*Klein v. Superior Court*,
198 Cal.App.3d 894 (1988) .......... 17

**Federal Statutes**

35 U.S.C. § 111(a) .......... 3

35 U.S.C. § 111(a)(2) .......... 3

35 U.S.C. § 111(b) .......... 3

35 U.S.C. § 112(b) .......... 3

35 U.S.C. § 112(b)(1)(A) .......... 3

**State Statutes**

Cal. Code of Evid. § 912 .......... 12

Cal. R. Prof. Con. 3-310(E) .......... 1, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff and Counterclaim Defendant Apollo Enterprise Solution, Inc.'s ("Apollo") motion to disqualify Greenberg Traurig, LLP ("Greenberg") as counsel for Defendant and Counterclaimant Lantern Credit, LLC ("Lantern") is a tactical ploy which should fail for at least two fundamental reasons. First, Greenberg's nominal patent related work for Apollo both began and ended with the filing of one provisional patent application more than *twelve years ago*. Contrary to Apollo's representations, the Smyrski Law Group, a completely unrelated law firm, *not* Greenberg, drafted, filed, and prosecuted all of the Apollo patents, including the patents Lantern seeks to invalidate through its Counterclaims. Second, Lantern's challenge to the validity of Apollo's patents arises solely from the 2014 U.S. Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014) which materially altered the standard for patentable subject matter under U.S. law. *Id.* at 2357 (2014) ("method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention"). This recent and fundamental change in patent law occurred more than a decade *after* Greenberg's representation of Apollo concluded, and has no bearing on the provisional patent application Greenberg filed more than twelve years ago.

This motion to disqualify Greenberg is just one component of Apollo's overall litigation strategy designed to disrupt the progress of this case, obtain perceived leverage, and deny Lantern its choice of counsel. Greenberg's current representation of Lantern does not create a conflict of interest and will not, in any way, prejudice Apollo. <u>Indeed, Apollo has known full well that Greenberg represented Lantern in this dispute for more than a year</u>. Because no substantial relationship exists between this lawsuit and Greenberg's prior representation of Apollo, California Rule of Professional Conduct 3-310(E) is inapplicable and Greenberg should be permitted to continue its representation of Lantern.

## II. FACTUAL BACKGROUND

### A. Apollo Retained Other Patent Counsel Before The Patents Were Ever Filed

In late August of 2004, Bruce Neel, and Christopher Darrow, patent attorneys in Greenberg's Phoenix and Los Angeles offices, respectively,[1] were retained to provide limited intellectual property services to Apollo. Specifically, Apollo, through its founder Christopher Imrey, requested that a provisional patent application relating to a method for settling a debt of a debtor be prepared. Within approximately one month of retention, the requested provisional application was drafted and filed on Apollo's behalf with the United States Patent and Trademark Office ("USPTO"). *See* Declaration of Bruce T. Neel ("Neel Dec."), ¶ 3. Greenberg *never* drafted, filed, or prosecuted any utility patent applications on behalf of Apollo; let alone those Apollo patents currently being challenged by Lantern. See, Neel Dec. ¶ 5. To the contrary, just four months after the provisional application was filed, Greenberg ceased representation of Apollo on all intellectual property matters (and ceased all work for Apollo of any nature shortly thereafter).

In March of 2005, Greenberg transferred the file and all responsibility for Apollo's provisional patent application to attorney Steve Smyrski of the Smyrski Law Group. Neel Decl ¶ 6. The Smyrski Law Group – not Greenberg – continues to be, and always has been, Apollo's patent counsel, responsible for all strategy, drafting, filing, prosecution, and maintenance of all patents in Apollo's portfolio, including the patents at issue here. *Id.* ¶ 7; *see also*, Dkt. 14-4 and 14-5 (Apollo patents listing Smyrski Law Group as counsel). Although Apollo's patents claim the benefit of the 2004 provisional application filing date, the provisional application itself has no substantive relationship to the patents ultimately issued to Apollo. Declaration of Rick Tache ("Tache Dec."), ¶¶ 16-17, Ex. A (explaining issue and highlighting patent differences between provisional application and issued patent).

[1] Mr. Darrow left Greenberg in 2010, and Mr. Neel is the subject of an ethical screen relating to any matters involving Apollo.

According to 35 U.S.C. §111(b), a provisional application for patent ("provisional application") is a low-cost means for an inventor to establish an early effective filing date. Because provisional applications are *not examined* by the USPTO, they are *not required* to have a formal patent claim, or an oath or declaration. A provisional application has a pendency of only 12 months from filing. To obtain the benefit of this filing date, an applicant (i.e. Apollo) must, within one year, file a corresponding non-provisional application ("utility application") in accordance with 35 U.S.C. §111(a).[2] In essence, a provisional application is nothing more than a short-term placeholder affording an applicant a 12 month window in which to file a corresponding utility application. Moreover, in accordance with the USPTO rules, in April 2006 (18 months after the provisional application was filed), the Apollo utility applications claiming the benefit of this filing date were published. To the extent that the provisional application contained any confidential information (which was incorporated by reference into the utility applications), as of April 2006, it became public knowledge.[3]

---

[2] Unlike a provisional application, 35 U.S.C. §111(a)(2) *requires* that a utility application include:

(A) a specification as prescribed by section 112;

(B) a drawing as prescribed by section 113; and

(C) an oath or declaration as prescribed by section 115.

35 U.S.C. §112(b) further requires that the (utility application) specification "shall conclude with one or more *claims particularly pointing out and distinctly claiming* the subject matter which the inventor or a joint inventor regards as *the invention*" (emphasis added).

[3] 35 U.S.C. §112(b)(1)(A) States that "each application for a patent [i.e. the Apollo utility applications claiming priority to the provisional application] shall be published, in accordance with procedures determined by the Director, promptly after the expiration of a period of 18 months from the earliest filing date [here, the provisional application filing date] for which a benefit is sought under this title."

Despite Apollo's representations to the contrary, Greenberg had nothing to do with the currently challenged Apollo patents beyond securing a priority filing date.[4] Moreover, to the extent Mr. Neel received *any* information or knowledge regarding the system and methods claimed in any of Apollo's patents, it became public when the USPTO published Apollo's application in 2006. Further, each of Apollo's patents, including those currently contested by Lantern, are materially different than the 2004 provisional application and contain claims drafted, filed, and prosecuted by and according to a strategy developed and implemented by the Smyrski Law Group without Greenberg's input or knowledge. See, Tache Dec., ¶¶ 10-17, Ex. A (explaining the material differences in the scope, claims, etc., of the provisional and the prior patent prosecution work, etc. and highlighting differences in exemplar patent).

### B. Lantern's Counterclaims Rely On The New Legal Standard For Patentability, Not Apollo's Provisional Patent Application

Central to Apollo's motion is the argument that Lantern's counsel is seeking to invalidate the same patents it once helped Apollo obtain. Not only is this factually inaccurate, a review of Lantern's actual invalidity claim against Apollo demonstrates the unsubstantiated nature of Apollo's position. Lantern seeks to invalidate at least U.S. Patent Nos. 7,814,005 (the "'005 Patent") and 8,510,214 (the "'214 Patent") by applying the standard set forth by the United States Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International*, which altered the standard for the patentability of inventions under 35 U.S.C. § 101. *Alice*, 134 S.Ct. at 2357 ("method claims, which merely require generic

[4] The multiple Greenberg client invoices attached as Exhibit A to Apollo's Motion are duplicative (the same invoices are included twice) and misleading. All but a fraction of the work referenced in the invoices pertains to corporate matters handled by former Greenberg attorneys, and has no relation to the issues raised in this motion. All but three time entries of Bruce Neel, the only Greenberg attorney at issue in Apollo's motion, are for work performed in a one month period between late September and early November 2004 (the vast majority contained in a single October 2004 invoice). The three nominal entries outside this period occurred in early 2005, and involved checking the docket and transferring Apollo's patent file to the Smyrski Law Group.

computer implementation, fail to transform that abstract idea into a patent-eligible invention”). This application of a new and binding legal standard has nothing to do with the provisional application Greenberg filed in 2004 (or the disclosure contained within the provisional application and incorporated by reference into the patents ultimately prosecuted by the Smyrski Law Group). The *Alice* standard of patentability was set forth by the Supreme Court in 2014, nearly ten years *after* Greenberg's representation of Apollo ceased. The passage of more than a decade since Greenberg's representation of Apollo, coupled with the April 2006 publication of all information from Apollo's provisional application, render impossible the notion that Greenberg possesses any confidential information obtained during its previous representation of Apollo which could in any way affect Lantern's patent invalidity arguments in the instant litigation.

### C. <u>The Sole Remaining Greenberg Attorney Associated With Apollo's Provisional Application Is Subject To An Ethical Screen</u>

Apollo first raised its disqualification threat to Lantern's counsel in March 2017. *See* ECF No. 14-7. After thoroughly investigating the issues raised in Apollo's letter, Greenberg determined that the allegations lacked merit, concluded that no conflict of interest existed, and declined to withdraw from the case. *See* ECF No. 14-8. Nonetheless, out of an abundance of caution, on March 15, 2017, Greenberg immediately implemented an ethical screen barring any attorneys working on this lawsuit (or for Lantern in general) from access to any information or files relating to Greenberg's prior representation of Apollo, and barring Mr. Neel from any access to or involvement with any legal work for Lantern or communication with Lantern's litigation counsel about Apollo.[5] Tache Decl. ¶ 6; Declaration of Tyler Andrews ("Andrews Dec.") ¶ 9.

---

[5] As a further example of Apollo's needlessly aggressive and tactical strategy, Apollo has now filed a direct lawsuit *against Greenberg*, based on the same meritless conflict of interest allegations raised in the motion. *Apollo Enterprise Solutions, Inc. v. Greenberg Traurig, LLP*, Los Angeles Superior Court Case No. BC660185 (filed May 5, 2017). Notably, the suit against Greenberg was filed before the conflict issue could be adjudicated here, and indeed does not even reference this federal court litigation or Apollo's pending disqualification motion.

**D. Apollo Has Always Been Aware Of Greenberg's Representation Of Lantern Regarding This Dispute**

For over a year, Apollo has been aware of Greenberg's representation of Lantern in connection with the dispute over the Master Services Agreement ("MSA") that led to the current lawsuit.[6] On September 24, 2014, Christopher Imrey, then a member of the Board of Directors of both Apollo and Lantern, engaged Greenberg on Lantern's behalf. Declaration of Douglas Norman ("Norman Decl.") ¶ 3. A few weeks later, on October 17, 2015, Mr. Imrey was copied on correspondence relating to Greenberg's representation of Lantern adverse to Apollo. *Id.* ¶ 4. Throughout 2016, Mr. Imrey continued to be involved in Lantern's discussions with Greenberg adverse to Apollo. *Id.* ¶¶ 5-8. Because Mr. Imrey was also a director of Apollo, Apollo had actual knowledge more than a year ago that Greenberg continued to represent Lantern in connection with the dispute over the MSA, including the potential patent defenses to any claim brought against Lantern by Apollo. At no time during any subsequent meetings of the Lantern Board of Directors or any of the numerous meetings between principals or authorized representatives of Apollo and Lantern, over the last year, attempting to resolve this dispute, did anyone at Apollo ever raise an issue with Greenberg's ongoing representation of Lantern. Apollo's failure to do so until after the lawsuit was filed constitutes a waiver of its right to attempt to disqualify Greenberg at this juncture of the ongoing dispute. *See, e.g., Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87-88 (9th Cir. 1983) ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right.")

---

[6] More generally, Apollo and Mr. Imrey have been aware of Greenberg's involvement in matters adverse to Apollo's patents and technology for at least ten years. *See Debt Resolve, Inc. v. Apollo Enterprise Solutions, LLC*, Case No. 3:07-cv-00103-MLC-TJB (D. NJ, Filed January 8, 2007) (later transferred to the Southern District of New York as Case No. 1:07-cv-04531-JSR)

Based on these facts, and as explained below, Greenberg has not violated Rule 3-310(E), no conflict of interest exists, and disqualification is not warranted here. This Court should deny Apollo's motion.

## III. LEGAL ARGUMENT

The California Rules of Professional Conduct prohibit attorneys from accepting employment adverse to a former client where "the [attorney] has obtained confidential information material to the employment." *See* Cal. R. Prof. Con. 3-310(E). If the representations are successive, disqualification is proper where either (1) the attorney actually possesses confidential information material to the employment, or (2) there is a "substantial relationship" between the former and current representation. *See generally Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, C08-04909 SI, 2010 WL 1136478, at *4 (N.D. Cal. Mar. 20, 2010). Neither of these situations is present here.

### A. Disqualification Is Disfavored

Disqualification of a party's chosen legal counsel is a "drastic measure" that is "generally disfavored;" motions to disqualify counsel should be granted only when "absolutely necessary." *See Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, C08-04909 SI, 2010 WL 1136478, at *4 (N.D. Cal. Mar. 20, 2010). This is so because of the high potential for abuse. *See, e.g., id.* (noting that such motions "are often tactically motivated and can be disruptive to the litigation process"). Courts uniformly reject strategically motivated disqualification motions out of hand. In fact, this Court has warned that "[d]isqualification motions can be (and often are) misused as weapons to harass opposing counsel, delay litigation, or force disadvantageous settlement." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 14-02139, 2014 WL 12589658, at *2 (C.D. Cal. June 16, 2014) (Fitzgerald, M.) (quotation omitted). Further, "[t]he purpose of a disqualification order is prophylactic, not punitive." *Kirk v. First Am. Title Ins. Co.*, 183 Cal.App.4th 776, 815 (Cal. App. 2010).

The U.S. Supreme Court has expressed "concern about the 'tactical use of disqualification motions' to harass opposing counsel." *Richardson-Merrell, Inc. v.*

*Roller*,472 U.S. 424, 436 (1985). As Justice Brennan opined, "[t]he tactical use of attorney misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation." *Id.* at 441 (Brennan J., concurring). "[B]ecause of this potential for abuse," the Ninth Circuit has instructed that "disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Companies*, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985).

In fact, "motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent." *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300–01 (1989), modified (Feb. 17, 1989); *see also Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1120 (D.N.J.1993) (a motion to disqualify that "reflects an attempt to . . . inhibit the ability of [Defendants] to fairly oppose Plaintiff's case[ ] is inimical to the search for truth . . . and cannot be condoned"); *see also Ernie Ball, Inc. v. Earvana, LLC,* No. 06-384, 2006 WL 4941832, at *2-3 (C.D. Cal. Aug. 9, 2006) (denying motion to disqualify Greenberg where the moving party "attempt[ed] to manufacture a conflict in order to reduce the availability of experienced counsel for the other side"); *In re Marvel*, 251 B.R. 869, 872 (Bankr. N.D. Cal. 2000), aff'd, 265 B.R. 605 (N.D. Cal. 2001) (denying motion to disqualify counsel and imposing sanctions where the motion "was without merit and brought for two improper reasons: dislike of [the attorney] engendered in other cases, and a desire to make [the attorney's] investigation of [the moving party's] conduct more difficult"); *Bobbitt v. Victorian House, Inc.*, 545 F. Supp. 1124, 1128 (N.D. Ill. 1982) (denying "disqualification motion [filed] as a litigation tactic," which "divert[ed] the litigation from attention to the merits").

Here, Apollo's request to disqualify Greenberg demonstrates why disqualification motions are disfavored. Rather than voicing legitimate concerns over potential prejudice to Apollo, the motion takes great pains to link the nominal legal work performed by Greenberg in 2004 to the invalidity claims posed by Lantern in the current case. The motion is clearly tactical, would serve no legitimate purpose, and runs contrary to the

established case law. It is designed to be punitive rather than prophylactic, and should be denied on this basis alone. At the very least, it is clearly not "absolutely necessary" to disqualify Greenberg in this matter, as there is no likelihood that Lantern's litigation counsel would ever come into contact with Apollo's confidential information (assuming such information even exists). Apollo's interests are adequately protected by several independent factors, including the dissimilarity of the two matters, the public nature of the patent documents, the length of time since the prior representation, and the ethical screen.

### B. <u>Greenberg Does Not Possess Any Confidential Information Related To This Matter</u>

Apollo's motion proffers no evidence that anyone at Greenberg possesses confidential information about Apollo or its patents. Therefore the focus of Apollo's motion is on (1) whether it must be automatically *presumed* that Mr. Neel has confidential information relevant to this litigation; and if so, (2) whether Mr. Neel's alleged constructive "possession" of confidential information automatically bars Greenberg from representing Lantern in this litigation.

Here, Mr. Neel has offered sworn testimony that he does not possess any confidential information concerning Apollo or its patents. *See* Neel Dec. ¶ 9. But even assuming such confidential information was obtained, disqualification is not proper where no "substantial relationship" exists between the subsequent representations. Further, even assuming *Mr. Neel* could conceivably be disqualified from representing Lantern in this matter, such disqualification should not be imputed to Lantern's attorneys on this case, or to anyone else at Greenberg Traurig.

### C. <u>No "Substantial Relationship" Exists That Would Mandate Disqualification of Greenberg</u>

Not all successive representations require disqualification. *See, e.g.*, *Banning Ranch Conservancy v. Superior Court*, 193 Cal.App.4th 903, 918 (Cal. App. 2011) ("former representation alone does not give rise to a lifetime prohibition against future

representation of an opposing party"); *Farris v. Fireman's Fund Ins. Co.*, 119 Cal.App.4th 671 (Cal. App. 2004) (noting that the rules do not have the effect of "creating a lifetime prohibition against representation adverse to a former client, treating the former client in the same fashion as a current client, or automatically mandating disqualification where the two compared matters are entirely unrelated.").

To disqualify an attorney based on a successive representation, the party seeking disqualification must show that there is a "substantial relationship" between the subject of the former and current representation. Successive representations are "substantially related" only where information material to the evaluation, prosecution, settlement, or accomplishment of the former representation is also material to the evaluation, prosecution, settlement or accomplishment of the current representation. *Jessen v. Hartford Cas. Ins. Co*. (2003) 111 Cal.App.4th 698, 713, 3 Cal.Rptr.3d 877. Further, a substantial relationship only exists if there is a "substantial risk" that the present representation will involve the use of information acquired in the course of the prior representation. *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th, 671, 679 (Ca. Ct. App. 2004). And a "substantial risk" only exists where it is reasonable to conclude that it would "materially advance" the present client's position in the subsequent matter to use confidential information obtained in the prior representation. *Id.* Without a substantial relationship between successive matters, confidential information is not presumed to exist, and disqualification is not mandated.

Courts take a "practical" approach to this inquiry, examining whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation. *See Genentech,* 2010 WL 1136478, at *5. "Merely knowing of a former client's general business practices or litigation philosophy is an insufficient basis for disqualification based upon prior representation." *See Banning Ranch*, 193 Cal.App.4th 903, 918.

**1. There is no Substantial Relationship Between the Former and Current Representations**

Here, there is no risk (let alone a "substantial risk") that any information obtained in 2004 in connection with preparing a provisional application could possibly "materially advance" Lantern's position in this matter, there is no "substantial relationship" between Mr. Neel's prior representation of Apollo and Greenberg's current representation of Lantern.

The "substantial relationship" standard "must be applied to individual cases by the exercise of the court's considered judgment based in reason, logic, and common sense." *Id*. Indeed, "[t]he substantial relationship test requires comparison not only of the legal issues involved in successive representations, but also of evidence bearing on the *materiality of the information* the attorney received during the earlier representation." (*Khani v. Ford Motor Co.,* 215 Cal.App.4th 916, 921. (Ca. Ct. App., 2013).

Courts have held that disqualification under this test is not warranted where information obtained by during the prior representation "*has become generally known*." *See Farris*, 119 Cal.App.4th 671, 679, citing Rest.3d, The Law Governing Lawyers, § 132 (emphasis added). Here, the only information Mr. Neel received from Apollo in 2004 was contained in a provisional application, incorporated by reference in the utility applications published in April 2006, and therefore has been "generally known" for over a decade.

Under California law, any claim of confidentiality "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." Cal. Code of Evid. § 912. Thus, where a party who holds the privilege later "publicly broadcast[s]" the confidential information, the privilege is waived. *Layer2 Communications, Inc. v. Flexera Software LLC*, No. 13-02131, 2014 WL 2536993 at *6-7 (N.D. Cal. Jun. 5, 2014) (denying motion to disqualify where the movant had publicly disclosed the supposedly confidential information). Filed patent documents and

applications, by their very nature, are "public broadcasts" to which no claim of confidentiality can apply, particularly more than *twelve years* after the representation at issue concluded. *See Johnson v. Superior Court*, 159 Cal. App. 3d 573, 579 (1984) (denying disqualification motion and holding no risk that information could be used to moving party's disadvantage where "the latest of the former representations occurred more than eight years before the present action was instituted" and the significance of the confidential information imparted "has no doubt been substantially attenuated by the passage of so much time.").

**2. Similar Subject Matter Is Not Sufficient To Establish A Substantial Relationship**

Apollo asserts that Lantern is seeking to invalidate the same patents it once helped to prosecute in the prior representation. This is simply false. Greenberg had no involvement whatsoever in the drafting, filing, or prosecution of Apollo's utility applications that issued into the patents currently being challenged by Lantern. The matter had been transferred to the Smyrski Law Group who filed the utility applications. Neel Dec. ¶ 6, Tache Dec. ¶¶ 10-15. To support its assertion, Apollo relies upon a faulty assumption in trying to link the two representations together as involving "similar subjects."

Even assuming the two representations at issue were related in some way, courts routinely find that similar subject matter or statutes do not necessarily amount to a "substantial relationship." *See, e.g.*, *Somers v. Digital Realty Trust, Inc.*, 119 F. Supp. 3d 1088, 1107 (N.D. Cal. 2015), *aff'd*, 15-17352, 2017 WL 908245 (9th Cir. Mar. 8, 2017) (prior employment advice to former client had "absolutely nothing" to do with whistleblower action against current client employer by former client); *Khani v. Ford Motor Co.*, 215 Cal. App. 4th 916, 922 (2013) (trial court "abused its discretion in concluding that the prior cases were substantially related to the current case just because they involved claims under the same statute," where attorney had represented Ford in Lemon Law cases and now sought to represent a plaintiff against Ford in a Lemon Law

case); *H. F. Ahmanson & Co.*, 229 Cal. App. 3d 1445 (1991) (no substantial relationship although both representations involved credit risk issues); *Kirk Corp. v. First American Title Co.*, 220 Cal. App. 3d 804, 813 (1990) (no substantial relationship where one member of the law firm assisted the plaintiff in drafting CC&Rs for the same condominium project involved in the litigation).

Apollo attempts to establish a straw man by arguing that an attorney cannot prosecute a patent application for one client and then turn around and challenge the validity of that same patent for another client. Greenberg did not draft, file, or prosecute the patents currently being challenged by Lantern. A provisional application, which is *not required* to have any claims, and is *not examined* by the USPTO,[7] cannot serve as the basis for prohibiting future patent challenges; especially when such challenge is based upon claims drafted, filed, and prosecuted by another law firm.

In *Walker Digital, LLC v. Axis Communications AB*, a federal court held that an attorney who had done patent prosecution work for a client was permitted, a decade later, to represent an opposing party in a patent infringement suit against the former client. *See* 1:11-CV-558-RGA, 2012 WL 5878668, at *3–4 (D. Del. Nov. 21, 2012). There, the court held that even if the attorney had learned of "general confidences," knowledge of the client's "general strategies and plans fifteen years ago" would not be harmful to the client so as to preclude that attorney from representing an opponent.

Here, similarly, even if Greenberg had learned of Apollo's "general confidences" by way of drafting and filing a provisional application over twelve years ago (which it did not), there is no legitimate argument that such "strategies and plans" could be harmful to Apollo now, or should preclude the entire firm from representing a future opponent. More compelling is the fact that the challenge to the validity of the Apollo patents has nothing to do with the provisional application prepared by Greenberg but

[7] *See*, John Calvert, *The Provisional Patent Application: What You Need To Know*, USPTO (Apr. 2010), https://www.uspto.gov/custom-page/provisional ("a [provisional application] is not examined"; and citing minimum requirements).

rather, is a direct result of a material change in patent law as set forth in a U.S. Supreme Court opinion issued almost ten years *after* Greenberg representation of Apollo ceased.

**3. Apollo Sets Forth No Authority Mandating Disqualification Of Greenberg**

The primary case upon which Apollo relies to seek Greenberg's disqualification, *Asyst Technologies*, involved a situation where two partners in a law firm prosecuted two patents on behalf of a client, then subsequently moved firms, and their new firm sought to challenge the validity of the same patents on behalf of a different client. *See Asyst Technologies, Inc. v. Empak, Inc.*, 962 F.Supp. 1241 (N.D. Cal. 1997). The court disqualified the firm, finding it particularly probative that "several of the affirmative defenses and counterclaims allege improper conduct by Asyst in prosecuting its patents." *Id*. at 1242.

Neither *Asyst* nor any of the related cases cited by Apollo have any bearing on the Greenberg's current representation of Lantern. Lantern is not attempting to invalidate Apollo's patents based on patent applications drafted, filed, or prosecuted by Greenberg on behalf of Apollo. To the contrary, Lantern's counterclaim for invalidity stems from the seismic shift in patentability standards caused by the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*. *See*, *Mortg. Grader, Inc. v. Costco Wholesale Corp.*, No. SA-CV-1300043-AG-ANX, 2014 WL 10763261, at *7 (C.D. Cal. Oct. 27, 2014) (permitting defendant to amend answer to assert Section 101 invalidity defense post *Alice* because "Courts and commentators have hailed *Alice* as a significant change" in patent law); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV-14-154-GW-AJWX, 2014 WL 4407592, at *3 n. 5 (C.D. Cal. Sept. 4, 2014) (dismissing patent-based claims as invalid under *Alice*, noting "*Alice'* s embrace of the *Mayo* framework for abstract idea cases was such a significant change or clarification that [the USPTO] has withdrawn issued notices of allowance—that is, stopped patents that had made it all the way through examination and were about to issue"); *Voter Verified Inc. v. Election Systems & Software LLC*, No. 16-cv-267-MW-GRJ (N.D. Fla.), Dkt. 25 (Ord. Granting

Mtn. to Dismiss) at 5 (Motion to Dismiss based on patent invalidity not barred preclusive effect of prior litigation of patent validity: "This Court concludes that *Alice* provided an authoritative decision that substantially changed the law; thus, the issue of patent validity is not precluded from further litigation.")

Determining invalidity under *Alice* involves a legal analysis applied to the actual claim language of the *issued patent*, which here was prepared, filed, and prosecuted by the Smyrski Law Group. *See Clarilogic, Inc. v. FormFree Holdings Corp.*, No. 2016-1781, 2017 WL 992528, at *1 (Fed. Cir. Mar. 15, 2017) (invalidating credit reporting software patent similar to Apollo's patents as "the height of abstraction") Apollo's patents are invalid based on a major, and relatively recent, change in patent law – *not* because of anything having even a remote connection to the 2004 provisional application.

**D. <u>Greenberg Should Not Be Disqualified Even If A Substantial Relationship Exists</u>**

Even if there was a "substantial relationship" between Mr. Neel's representation of Apollo thirteen years ago and the current litigation, that fact should not operate to automatically bar Greenberg from representing Lantern in this matter, as there is no legitimate risk of any confidential information could be obtained by Lantern's counsel, and Greenberg took immediate practical steps to implement an ethical screen out of an abundance of caution.

The Ninth Circuit has recognized that "[t]he changing realities of law practice call for a more functional approach to disqualification than in the past." *In re Cty. of Los Angeles*, 223 F.3d 990, 997 (9th Cir. 2000). "An ethical wall, when implemented in a timely and effective way, can rebut the presumption that a lawyer has contaminated the entire firm." *Id.* at 996. While the California Supreme Court has not spoken definitively on ethical walls, the Ninth Circuit determined that "the California Supreme Court may well adopt a more flexible approach to vicarious disqualification." Id. at 995 (citing *People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1151–

52 (1999), where the California Supreme Court "left open the possibility that screening can rebut the presumption of shared confidences within the firm").

At least one California Court of Appeal has followed the Ninth Circuit's reasoning and held that imputed knowledge to a law firm by a purportedly tainted attorney "may be rebutted by evidence of effective ethical screening." *Kirk v. First Am. Title Ins. Co.,* 183 Cal. App. 4th 776, 814 (2010), as modified (May 6, 2010). *Kirk* considered the realities of the modern large law firm practice and concluded that "[t]hese are not attorneys discussing their cases regularly, passing each other in the hallways, or at risk of accidentally sharing client confidences at lunch. In a situation where the "everyday reality" is no longer that all attorneys in the same law firm actually "work[ ] together," there would seem to be no place for a rule of law based on the premise that they do." *Id.* at 802; *see generally State Insurance Compensation Insurance Fund v. Drobot*, 2014 WL 12579808, *7 (C.D. Cal. 2014) (holding that *Kirk* "correctly reflect[s] the changing times in law firm operation and culture" and noting that "[i]n this age of thousand-attorney firms, where people move frequently from firm to firm, some flat rules don't fit as well as they used to.")

Here, despite the fact that Greenberg strongly disputes the existence of any conflict of interest, Greenberg implemented a prophylactic ethical wall immediately upon learning of the alleged conflict. *See* Dkt. 14-8. That wall, which was fully implemented and acknowledged mere days after Greenberg was apprised of the potential conflict of interest, screens Bruce Neel and Lantern's counsel from exchanging any information or documents related to this Litigation. Id. ¶¶ 7-10. Moreover, it is undisputed that even before the ethical wall was implemented, Mr. Neel (who works in a different practice group and an office hundreds of miles away from Lantern's attorneys) did not convey any information related to Apollo or its patents to Lantern or the Greenberg attorneys representing Lantern in this matter. Tache Dec. ¶ 9; Andrews Dec. ¶ 10. Therefore, given the "changing realities of law practice" in a global firm such as Greenberg, Lantern

has effectively "rebut[ted] the presumption that a lawyer has contaminated the entire firm." *In re Cty. Of Los Angeles*, 223 F.3d at 996-97.

Apollo cites to *Hitachi*, 419 F.Supp.2d 1158 (N.D. Cal. 2006) for the proposition that ethical screens may be insufficient to cure purported conflicts based on successive representations. But unlike this case, in *Hitachi* there was no legitimate dispute that the subsequent representations at issue *were* substantially related. The only issue was whether or not an ethical screen could allow the new firm to continue to defend against a lawsuit involving its former client. Such a question weighs far heavier *against* mandatory disqualification in a situation where -- as here – not only is an ethical screen in place, but the "substantial relationship" between the 2004 representation of Apollo and the current representation of Lantern is tenuous at best.

Further, *Hitachi* (which was decided years before the far more applicable *Kirk* and its progeny) relies upon three older California cases[8] (the most recent of which was decided over twenty years ago), and itself questions the propriety of such a blanket prohibitory rule. *See*, *Hitachi*, 419 F. Supp. 2d at 1164 (noting that some courts have begun to take a more flexible approach even where substantial relationships between matters undoubtedly exist, and noting that "the law in California may be at a critical shift"). The *Hitachi* court also left open the possibility that if the matter had been transferred at the outset to another branch office of the firm, the result may have been different. *See id.*, at 1165 ("Moving the matter to another office would reduce the contact that [the attorney] would have with the attorneys handling this case and could relieve some of the Court's concerns while preserving [the client's] interest of having effective counsel of their choice," but noting that this should have been done at the outset).

Here, Lantern's attorneys on this matter and Mr. Neel in the Phoenix office represent only a few of approximately 2000 attorneys practicing with Greenberg. They

[8] *Klein v. Superior Court*, 198 Cal.App.3d 894, 912–14, 244 (1988); *Henriksen v. Great American Savings & Loan*, 11 Cal.App.4th 109, 117 (1992); *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (1994).

have never once discussed anything related to Apollo, and indeed do not even know one another. Mr. Neel focuses on patent prosecution, while Lantern's counsel are commercial and intellectual property litigators. *See generally Drobot*, 2014 WL 12579808, *8 (commenting that confidential information is less likely to be exchanged across different practice groups; "it's less likely that transactional attorneys are 'sitting around the coffee pot' with litigation attorneys to share confidential information with them."). This is a classic situation in which any conceivable doubt over the propriety of Greenberg's earlier representation could be adequately remedied by an ethical screen, and, as discussed above, such a screen has already been implemented. As such, imposing the mandatory disqualification of Greenberg despite its prompt and reasonable actions in implementing an ethical wall would enormously prejudice Lantern and run contrary to the recent cases rejecting strict disqualification as unrealistic and unfair. Given the realities of modern practice in large law firms, the more recent cases have the far better, more practical, and more just approach. This Court should find the same.

**E. <u>Policy Considerations Favor Lantern's Choice Of Counsel</u>**

Considerations relevant to a motion for disqualification include: (1) a client's right to chosen counsel; (2) an attorney's interest in representing a client; (3) the financial burden on a client to replace disqualified counsel; (4) the possibility that tactical abuse underlies the disqualification motion; (5) the need to maintain ethical standards of professional responsibility; and (6) the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. *See Kirk*, 183 Cal. App. 4th 776, 807-08. These factors tilt heavily in favor of denying Apollo's motion.

Greenberg has consistently represented Lantern regarding this dispute with Apollo for nearly two years. Long before Apollo filed the complaint in this lawsuit, Greenberg had advised Lantern pertaining to its contract with Apollo. It would be extremely prejudicial to Lantern, both financially and substantively, to have its long standing trial counsel disqualified at this time. On the other hand, Apollo will suffer no actual prejudice whatsoever if Lantern maintains its current counsel.

Further, Apollo's motion appears motivated by a desire for a tactical advantage over Lantern, rather than by a genuine concern over Apollo's rights and confidences. Indeed, the fact that the disqualification motion was filed on the last possible day prior to the initially scheduled May 15 hearing date (leaving Lantern with less than three business days to investigate and respond to the serious allegations contained in the motion) only bolsters the conclusion that the motion is tactical rather than necessary.

Finally, there is no risk that Greenberg's current representation of Lantern will damage the public trust in the administration of justice or the integrity of the bar. Greenberg has not engaged in any unethical, or even questionable, behavior in representing Lantern. To the contrary, as soon as the conflict claim was raised, Greenberg erected an ethical screen to ensure that there would be no communications with the patent prosecutor who filed the provisional application in 2004. In fact, there have never been any discussions with that attorney regarding Lantern or this dispute at any time. Both the bar and the public understand that an attorney's prior representation, fully concluded, cannot then create a lifetime prohibition of any adverse action against the former client. Here, despite Apollo's valiant attempt to create a "substantial relationship" between a 2004 provisional application and the validity of separate patents issued years later, the actual facts bear out no such connection, and do not implicate the public trust in any manner.

## IV. <u>CONCLUSION</u>

For all the foregoing reasons, Defendant respectfully requests that the Court deny Apollo's motion to disqualify Greenberg Traurig, LLP as counsel for Lantern.

DATED: May 8, 2017 GREENBERG TRAURIG, LLP

By *<u>/s/ Tyler R. Andrews</u>*
Tyler R. Andrews
Attorneys for Defendant
LANTERN CREDIT, LLC.

**CERTIFICATE OF SERVICE**

I, Tyler R. Andrews, an attorney, hereby certify that on May 8, 2017, I caused a complete and accurate copy of the foregoing document to be served via this Court's ECM/ECF notification system, which will serve electronically to all participants in the case.

*/s/ Tyler R. Andrews*