UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| APOLLO ENTERPRISE SOLUTIONS, INC., | Case No.: CV 17-02331-AB (JCx) |
|---|---|
| Plaintiff, | **[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION TO REMAND [13] AND DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS [34]** |
| v. | |
| LANTERN CREDIT, LLC F/K/A NEW ENGLAND FUNDING TECHNOLOGIES, LLC, | |
| Defendant. | |

**I. INTRODUCTION**

Pending before the Court are two Motions brought by Plaintiff Apollo Enterprise Solutions: Plaintiff's Motion to Remand, (Dkt. No. 13), and Plaintiff's Motion to Dismiss Defendant Lantern Credit, LLC's Amended Counterclaims, (Dkt. No. 34). Defendant filed an Opposition to each Motion, (Dkt. Nos. 23, 37), and Plaintiff replied, (Dkt. Nos. 38, 40). Having considered the papers filed in support of and in opposition to each Motion, and for the following reasons, the Court **DENIES** Plaintiff's Motions.

## II. BACKGROUND

Plaintiff Apollo Enterprise Solutions, Inc. ("Apollo") is a California corporation that provides advanced payment and collection solutions to credit issuers and debt buyers. (*See* Dkt. No. 1, Ex. 2 ("Compl.") ¶ 6.) One of Apollo's services, TrueCollect, "allows creditors to recover delinquent debts fast and efficiently . . . by combining online payment, debt collection, and debt recovery technologies into one offering." (*Id.* at ¶ 7.) Defendant Lantern Credit LLC ("Lantern") is a financial technology company that provides interactive credit reports and operates an online platform focused on the consumer credit market. (Dkt. No. 37, Lantern's Opposition to Apollo's Motion to Dismiss ("MTD Opp'n") at 1; *see also* Dkt. No. 21, Lantern's First Amended Counterclaims ("Counterclaims") ¶ 11.) On August 1, 2014, Apollo and Lantern entered into a Master Services Agreement ("MSA"). (Compl. ¶ 8; Counterclaims ¶ 12; *see also* Counterclaims at Ex. 3.) Under the MSA, Apollo licensed some of its technologies and agreed to provide certain services relating thereto to Lantern. (Compl. ¶ 9; Counterclaims ¶¶ 12–13.)

In or around October 2015, Lantern stopped paying Apollo the amounts allegedly due under the MSA. (Compl. ¶ 12; Counterclaims ¶ 24.) As a result, Apollo filed suit in the Superior Court of California, County of Los Angeles alleging breach of contract, account stated, services rendered, and open book account. (Compl. ¶¶ 14–34.) Subsequently, on March 24, 2017, Lantern filed its Answer and Counterclaims and removed the case to this Court. (*See* Dkt. No. 1.) Lantern's original Counterclaims sought a declaration of patent invalidity and noninfringement and alleged claims for fraudulent inducement, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, and money had and received. (*See* Dkt. No. 1, Ex. 3.) Apollo filed its initial motion to dismiss on April 14, 2017, (Dkt. No. 12), and the instant Motion to Remand on April 17, 2017, (Dkt. No. 13). Lantern subsequently filed its First Amended Counterclaims on May 5,

2017, mooting Apollo's initial motion to dismiss. (*See* Dkt. No. 21.) Apollo filed the instant Motion to Dismiss on July 17, 2017. (Dkt. No. 34.)

### III. LEGAL STANDARD

#### a. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a complaint must be dismissed if the Court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the Court will presume lack of subject matter jurisdiction until the proponent proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In evaluating a Rule 12(b)(1) motion, the question of whether the Court must accept the complaint's allegations as true turns on whether the challenge is facial or factual. A facial attack is one in which subject matter jurisdiction is challenged solely on the allegations in the complaint, attached documents, and judicially noticed facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In the case of a facial attack, the Court is required to accept as true all factual allegations set forth in the complaint. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

In contrast, a factual attack (or a "speaking motion") is one in which subject matter jurisdiction is challenged as a matter of fact, and is based on evidence outside of the pleadings. *Safe Air*, 373 F.3d at 1039. In assessing the validity of a factual attack, the Court is not required to presume the truth of the plaintiff's factual

allegations. *Id.* at 1039. Plaintiff's challenge to the Court's jurisdiction is based on Defendant's alleged failure to plead facts sufficient to satisfy the requirements of the Declaratory Judgment Act; accordingly, the Court treats the instant motion as a facial attack.

### b. Declaratory Judgment Act

A federal court only has jurisdiction to award declaratory relief where there exists an actual controversy. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citing *Wickland Oil Terminals v. ASARCO, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986)). The Supreme Court has established that this requirement mirrors Article III's constitutional case or controversy requirement. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). While the Supreme Court has not fashioned a concrete test for determining whether a suit for a declaratory judgment raises an actual controversy, it has explained that there must exist "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Ultimately, "[t]he difference between definite, concrete and substantial controversies which are justiciable, and hypothetical, abstract, or academic ones which are not justiciable, is one of degree, to be determined on a case by case basis." *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504 (2d Cir. 1968); *see also Maryland Cas.*, 312 U.S. at 273 (question "is necessarily one of degree"). Further, as the declaratory judgment plaintiff, Lantern bears the burden of proving by a preponderance of the evidence that an actual controversy exists between the parties. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).

## IV. DISCUSSION

### a. Request for Judicial Notice

Apollo asks the Court to take judicial notice of a screen shot of "Laterncredit.com." (Dkt. No. 41 ("RJN") at 2.) Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Apollo argues that because the website is publicly available, the website's authenticity is not in dispute and is capable of "accurate and ready determination." (RJN at 2, 3 (citing *Prime Healthcare Servs. Inc. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1201 (C.D. Cal. 2017).) The screenshot at issue is from a publicly available website, and is thus a matter in the public realm. When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true. *Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.118 (9th Cir. 1999).

"Two related concerns, however, generally caution against taking judicial notice of websites. First, as the Seventh Circuit recognized, the internet contains an unlimited supply of information with varying degrees of reliability, permanence, and accessibility." *United States v. Kane*, No. 2:13-CR-250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. Oct. 28, 2013) (citing *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011)). Corporate websites, in particular, are often marketing tools that contain more "puffery" than fact. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3rd Cir. 2007). Before taking judicial notice of facts contained in

websites, the Third and Seventh Circuits advise authenticating printouts of the webpage under Rule 901, supporting the printouts with affidavits, or holding a hearing on the facts to be noticed in order to give the opposing party an opportunity to respond. *Kane*, 2013 WL 5797619, at \*9; *Pickett*, 664 F.3d at 648.

In this case, the general concerns raised by taking judicial notice of websites are minimized because the document is a screenshot of Lantern's own website. *See Prime Healthcare Servs. Inc.*, 230 F. Supp. 3d at 1201–02. The information is published by the defendant itself, and is relevant to the issues raised. Moreover, Lantern, rather than a third party, as control over the information published on its own website. Lastly, Lantern does not oppose this request. Accordingly, Apollo's request for Judicial Notice is **GRANTED**.

### b. Subject Matter Jurisdiction

Apollo argues that the Court lacks subject matter jurisdiction over Lantern's first and second counterclaims, which seek a declaratory judgment of patent invalidity and noninfringement, respectively. (Dkt. No. 34 ("MTD") at 7.) Apollo contends that no "immediate and real controversy" exists between the parties on this issue because, even if Apollo had threatened to sue Lantern for infringement, any such threat was withdrawn when Apollo filed its Complaint and did not include a claim for infringement. (MTD at 10.) Apollo asserts that the alleged controversy is of "Lantern's own creation"; indeed, Apollo claims it simply wants to *enforce* the MSA, not terminate it. (MTD at 6.)

Lantern argues that Apollo's Chairman and CEO "directly accused Lantern of infringing Apollo's patents and threatened Lantern with an infringement action." (MTD Opp'n at 5.) Lantern also claims that prior to this threat, in September 2015, Apollo sent multiple notices and invoices demanding Lantern pay "over $1.9 million in patent license fees, [schedule of work] invoices, and other maintenance fees for work on the and other 'products' purportedly embodied by the patents licensed under

the MSA." (Counterclaims ¶ 25.) Therefore, Lantern asserts that it was in reasonable apprehension of an infringement suit and that a real and substantial controversy exists.

"Rather than a purely subjective fear or the mere existence of a potentially adverse patent alone, the alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a 'restraint on the free exploitation of non-infringing goods,' or an imminent threat of such restraint." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (citing *Caraco Pharm. Labs. Ltd. v. Forest Labs.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008)).

A patentee can cause such an injury in a variety of ways, for example, by creating a reasonable apprehension of an infringement suit, *e.g., Arrowhead Indus. Water*, 846 F.2d at 737, demanding the right to royalty payments, *e.g.*, *MedImmune*, 549 U.S. at 136, or creating a barrier to the regulatory approval of a product that is necessary for marketing, *e.g.*, *Caraco*, 527 F.3d at 1292–94. *See also Arrowhead Indus. Water*, 846 F.2d at 735 (describing the type of "sad and saddening scenario" that led to enactment of the Declaratory Judgment Act in which the "patent owner attempts extrajudicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity").

Lantern claims Apollo threatened to bring an infringement action against it. This threat, coupled with Apollo's demands that Lantern pay the fees required under the MSA, are sufficient to establish a real and substantial controversy as contemplated by the Declaratory Judgment Act. *See, e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000) (finding declaratory judgment jurisdiction based on trademark owner's cease and desist letter despite the fact that trademark owner offered to waive all trademark infringement and related claims); *Prasco*, 537 F.3d at 1336 (noting that a demand of royalty payments is one way to establish a case or controversy); *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir.

2012) (finding that engaging in informal discussions could be sufficient to create a justiciable controversy even if the defendant did not provide a detailed infringement analysis). Accordingly, Apollo's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED.**

### c. Removal Under Section 1454

Lantern asserts that removal is proper under both the general removal statute, 28 U.S.C. § 1441, and the patent-specific statutes, 28 U.S.C. §§ 1338 and 1454. (Dkt. No. 23 ("Remand Opp'n") at 1, 6, 13.) The Court does not address the propriety of removal under the general removal statute or under Section 1338 since it concludes that removal is proper under Section 1454. This latter statute was newly added to the body of federal jurisdiction statutes as part of the America Invents Act ("Act"). Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 (2011). The removal statute provides that

> (a) In General.—A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to the district court of the United States for the district and division embracing the place where the action is pending.
>
> (b) Special Rules.—The removal of an action under this section shall be made in accordance with section 1446, except that if the removal is based solely on this section—
>
> > (1) the action may be removed by any party; and
> >
> > (2) the time limitations contained in section 1446(b) may be extended at any time for cause shown.
>
> (c) Clarification of Jurisdiction in Certain Cases.—The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in the civil action because the State court from which the civil action is removed did not have jurisdiction over that claim.

> (d) Remand.—If a civil action is removed solely under this section, the district court—
>
>> (1) shall remand all claims that are neither a basis for removal under subsection (a) nor within the original or supplemental jurisdiction of the district court under any Act of Congress; and
>>
>> (2) may, under the circumstances specified in section 1367(c), remand any claims within the supplemental jurisdiction of the district court under section 1367.

28 U.S.C. § 1454.

The Act also amended 28 U.S.C. § 1338(a), the statute conferring on district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents," to provide that "[n]o State court shall have jurisdiction over any claim for relief under any Act of Congress relating to patents[.]" 28 U.S.C. § 1338(a). Together with the amendment to 28 U.S.C. § 1295(a)(1), which extended the Federal Circuit's jurisdiction to "compulsory counterclaim[s] arising under . . . any Act of Congress relating to patents," these patent-related changes are commonly known as the "Holmes Group fix." Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 539 (2012). This "fix" was adopted in response to an earlier decision by the Supreme Court, which held that a counterclaim by a defendant cannot serve as the basis for "'arising under' jurisdiction" under 28 U.S.C. § 1295(a)(1). *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). Rejecting *Holmes*, the three statutes "provide[d] federal courts . . . with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws even when asserted in counterclaims." *Vermont v. MPHJ Tech. Invs., LLC* ("*MPHJ*"), 803 F.3d 635, 644 (Fed. Cir. 2015).

Thus, Section 1454 permits the defendant to remove the action to federal court on the basis that either the plaintiff's claims or the defendant's counterclaims "arise

9.

under" an Act of Congress related to patents. 28 U.S.C. § 1454; *MPHJ*, 803 F.3d at 644. As a preliminary matter, courts interprets the term "arising under" in Section 1454 in a manner similar to the more established interpretation in Sections 1331 and 1338 of the same act. *See Gunn v. Minton*, 568 U.S. 251 (2013). This term of art refers most often to "federal law creat[ing] the cause of action asserted." *Id.*

Among claims created by state law, however, there is a "'special and small category' of cases" that fall within the scope of "arising under" federal jurisdiction. *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). For a claim to fit within this category, a federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

Here, Lantern asserts counterclaims for declaratory judgment of non-infringement and patent invalidity, among others. (Dkt. No. 21 ("Am. Counterclaims") at 10–12.) These claims are brought under the Declaratory Judgement Act and specifically concern Apollo's patents; the Court will have to interpret the patents to determine whether Lantern's business infringes the patents and whether the patents are valid. These issues clearly arise under "an Act of Congress relating to patents." Thus, removal pursuant to Section 1454 was proper. *See Alexsam, Inc. v. Green Dot Corp.*, No. 2:15–cv–05742–CAS(PLAx), 2015 WL 6520917, at *4 (C.D. Cal. Sept. 28, 2015) (counterclaim for declaratory judgment served as basis for removal under § 1454). Accordingly, Apollo's Motion to Remand is **DENIED.**

### d. Attorneys' Fees

Apollo requests attorneys' fees in connection with its Motion to Remand. (Dkt. No. 13 ("Remand Mot.") at 15.) Since the Court denied Apollo's Motion, fees are not

appropriate. *See* 28 U.S.C. § 1447(c) (providing that, *upon remand*, a court may exercise its discretion to award attorney fees "incurred as a result of the removal").

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Apollo's Motion to Dismiss, (Dkt. No. 34), and **DENIES** Apollo's Motion to Remand, (Dkt. No. 13). Further, the Court **DENIES as moot** Lantern's Motion to Amend the Pretrial Scheduling Order pending a ruling on the jurisdictional dispute resolved herein. (Dkt. No. 45.)

**IT IS SO ORDERED.**

Dated: January 16, 2018

_____

HONORABLE ANDRÉ BIROTTE JR.

UNITED STATES DISTRICT COURT JUDGE